14 F.3d 596
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
SIGNET BANK/VIRGINIA, Plaintiff-Appellee,
v.
Abbas A. RAWOOT, Defendant-Appellant.
Citibank South Dakota, n.a., Plaintiff-Appellee,
v.
Abbas A. Rawoot, Defendant-Appellant.
 Nos. 92-2407, 92-2408.
 United States Court of Appeals, Fourth Circuit.
 Argued October 27, 1993.
Decided December 10, 1993.
 
 Appeals from the United States District Court for the Western District of Virginia, at Harrisonburg.
 Teresa Kane Rawoot, for Appellant.
 Jeffrey Ayers Ward, Franklin, Franklin, Denney & Ward, for appellee.
 W.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and HALL and LUTTIG, Circuit Judges.
 
 PER CURIAM
 OPINION
 
 1
 Defendant-Appellant Abbas A. Rawoot appeals from the district court's order affirming the bankruptcy court's judgment against him. We affirm.
 
 I.
 
 2
 Abbas Rawoot and his wife, a certified accountant and an attorney respectively, acquired and took over management of a restaurant and lounge known as the Edinburg Mill (the Mill) in May 1989. The Mill soon experienced revenue shortfalls, however, and the new restauranteurs were required to apply all incoming revenue to staff salaries and other business expenses. J.A. at 74. In October 1990, Mr. Rawoot was forced by the restaurant's deteriorating financial condition to seek new employment, which he still had not found in the spring of 1991. Id. at 106. As the Mill's business continued to decline throughout the spring of 1991, a period during which the overall economy was weak, the Rawoots were unable to take a salary from the restaurant, id. at 55-56, 74, and resorted to living off of credit cards, id. at 55, 105.
 
 
 3
 On May 1 and May 7, 1991, Mr. Rawoot obtained two credit card cash advances, one in the amount of $2,250 on his Citibank Visa, and one in the amount of $1,200 on his Signet card.[1] On May 14, one week after the second advance, Mr. Rawoot filed for relief under Chapter 11 of the Bankruptcy Code.[2]
 
 
 4
 The two banks that funded the cash advances filed this consolidated action in the bankruptcy court to have Mr. Rawoot's debt from the cash advances declared nondischargeable as fraudulently obtained debt under 11 U.S.C. Sec. 523(a)(2). The parties stipulated that the banks had established the presumption of fraudulent intent under section 523(a)(2)(C). J.A. at 39-40. The bankruptcy court found that Mr. Rawoot failed to rebut this presumption, and granted judgment in favor of the banks. The district court affirmed, and this appeal followed.
 
 II.
 
 5
 Section 523(a)(2)(A) of the Bankruptcy Code provides that debt incurred through false pretenses or representations, or through actual fraud, will be not be discharged in bankruptcy. 11 U.S.C. Sec. 523(a)(2)(A). Section 523(a)(2)(C) provides that
 
 
 6
 for purposes of [section 523(a)(2)(A) ] ... cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under [the Bankruptcy Code], are presumed to be nondischargeable.
 
 
 7
 11 U.S.C. Sec. 523(a)(2)(C). As the parties agree that appellees established the section 523(a)(2)(C) presumption, the only question presented in this case is whether the bankruptcy judge erred in finding that Mr. Rawoot failed to rebut the presumption of nondischargeability. To rebut this presumption, Mr. Rawoot was required to "raise[ ] a substantial doubt in the mind of the [bankruptcy judge] as to the existence of the presumed intent [to defraud his creditors]." In re Orecchio, 109 B.R. 285, 290 (Bankr.S.D. Ohio 1989).
 
 
 8
 The bankruptcy judge did not err in holding that Mr. Rawoot failed to raise substantial doubt as to his fraudulent intent. As the court found, Mr. Rawoot had no salary at the time of the advances, J.A. at 74, and consequently had "no wherewithal whatsoever to pay the credit card charges." Id. at 75. Although the court may not have doubted the sincerity of Mr. Rawoot's hopes that he could someday salvage his failing business, id., the court expressly found that "Mr. Rawoot knew at the time [of the charges] that he was unable to make the contractual payments," and therefore could not make the requisite showing to rebut the presumption. Id. at 76; see, e.g., In re Lay, 29 B.R. 258, 260 (Bankr.M.D. Fla.1983) (credit purchase with knowledge of inability to pay is non-dischargeable under section 523(a)(2)(A)).
 
 
 9
 The court's factual finding that Mr. Rawoot knew he was unable to repay the cash advances likewise was not clearly erroneous. Cf. Williamson v. Fireman's Fund Insurance Co., 828 F.2d 249, 252 (4th Cir.1987) (deference to bankruptcy court's finding of fraudulent intent is particularly appropriate). There is no evidence in the record before us that Mr. Rawoot had any income at the time of the charges. J.A. at 106. Rawoot himself admits that he was unable to take a salary from his business, id. 55-56, 74, and that he and his wife had resorted to living off of credit cards, id. at 55, 105. There is, moreover, no evidence that the Rawoots' business, which has since failed, was likely to rebound suddenly from its seriously distressed financial condition. Nor is there any evidence that Mr. Rawoot's search for another job, which had been ongoing for seven months at the time of the advances, would prove productive, id. at 106, or that his primary creditor was inclined to relieve Mr. Rawoot of any or all of his debt burden.
 
 
 10
 In short, Mr. Rawoot was in dire financial straits when, only a week or two prior to filing for bankruptcy, he obtained the cash advances at issue here. There is no question that, as a certified accountant with an MBA and over fifteen years of accounting experience, id. at 23, Mr. Rawoot was fully aware of the scope and consequences of his actions in securing the cash disbursements in his thencurrent financial circumstances.
 
 
 11
 The judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 The $1,200 advance was actually in the form of a purchase at the restaurant, but the bankruptcy court held, and Rawoot concedes, that this purchase was a cash advance. J.A. at 74, Appellant's Br. at 5
 
 
 [2]
 The bankruptcy proceeding was subsequently converted to a Chapter 7 proceeding