**In re Curtis Maurice LARISEY and Nancey Geraldine Larisey, Debtors.**

**BANK ONE LAFAYETTE, N.A., Plaintiff,**

**v.**

**Curtis Maurice LARISEY and Nancey Geraldine Larisey, Defendants.**

**Bankruptcy No. 94–055255–6B7.**
**Adv. No. 95–0004.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

March 21, 1995.

Kevin Mangum, Orlando, FL, for plaintiff.

Nancey Larisey, pro se.

### MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the complaint of the Plaintiff, Bank One Lafayette, N.A. ("Bank One") to determine the dischargeability of indebtedness owed to it pursuant to 11 U.S.C. § 523(a)(2) from Debtors/Defendants, Curtis Maurice Larisey and Nancey Geraldine Larisey (the "Lariseys"). This matter was heard as a final evidentiary hearing by stipulation of the parties during the telephonic status conference. Appearing telephonically were Kevin Mangum, attorney for the Plaintiff, Bank One, and Debtor, Nancey Larisey, pro se. After reviewing the pleadings, evidence, receiving testimony, arguments of counsel, and authorities for their respective positions, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On October 11, 1994, the Lariseys filed for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Nancey Larisey stopped working as a waitress in mid 1993 when she became pregnant with twins. The Lariseys' total income for 1993 was $20,000.00. The Lariseys' total income for 1994 was $11,000.00. They could not afford to live on only Curtis Larisey's salary and were hoping for a $35,000.00 heavy equipment position that had been promised him for several years. It was not until after the bankruptcy was filed that he learned he would not receive this position.

The Lariseys opened an account with Bank One on December 14, 1993, Account No. 4310–0480–4502–5158. The credit limit on the account was $5,300.00. In August 1994,

the balance of $28.50 was paid off. The Lariseys were in the process of improving the condition of their home to market it for sale. On August 29, 1994, 43 days before filing bankruptcy, the Lariseys charged $835.00 to repair the air conditioning. On September 10, 1994, 29 days before filing bankruptcy, they charged $1,009.36 to buy carpeting for the house. The air conditioning repair and the new carpeting were improvements which would reasonably increase the likelihood of selling the home and realizing a profit. The asking price for the house was $57,000.00. More than eight years before, it had been purchased for $51,000.00. There would have been more than $10,000.00 equity if they had received the asking price. To date, the house has not been sold. The debts for the air conditioning repair and carpet purchase were not incurred with an intent to defraud Bank One.

On September 26, 1994, 15 days before filing bankruptcy, the Lariseys obtained a cash advance of $3,400.00. The money was used to buy a used car for a nominal amount so Nancey Larisey would have a vehicle permitting her to transport the children; repay a loan for previous mortgage payments; and past due mortgage payments. In October 1994, their statement with Bank One reflected a balance of $5,234.17, within the authorized credit limit. The cash advance was not incurred with an intent to defraud Bank One.

The Lariseys did not contemplate filing bankruptcy until the weekend before the bankruptcy petition was filed.

### CONCLUSIONS OF LAW

Section 523(a)(2)(C) of the Bankruptcy Code excepts from discharge:

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor; and extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act (15 U.S.C. § 1601 *et seq.*);

11 U.S.C. § 523(a)(2)(C).[1]

■■■ The carpeting purchase and the air conditioning repair were incurred to refurbish the home for sale and are consumer debts pursuant to 11 U.S.C. § 101(8)[2]. Section 523(a)(2)(C) requires a determination whether the debts exceeding $500.00 were for "luxury goods or services." Luxury goods do not include "goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor." 11 U.S.C. § 523(a)(2)(C). In determining if an item is a luxury good, one should consider whether the item purchased served any significant family function and whether the transaction evidenced some fiscal irresponsibility. *In re Williams,* 106 B.R. 87, 89 (Bankr.E.D.N.C.1989), *citing In re Davis,* 56 B.R. 120 (Bankr.D.Mont.1985). Extravagant, indulgent, or nonessentials are considered luxury goods. *Williams, Id.*

1. Bank One's complaint alleges the Lariseys obtained luxury goods/services and cash advances within 60 days prior to filing bankruptcy. The amendments to the Bankruptcy Code by Bankruptcy Reform Act of 1994, Oct. 22, 1994, Pub.L. No. 103–394, § 702, 108 Stat. 4150, provides that amendments made to Section 523(a)(2)(C) changing the 40 days for luxury goods and 20 days for cash advances to 60 days for each with respect to the dates determining the presumption of nondischargeability "shall take effect on the date of enactment of this Act" but "shall not apply with respect to cases commenced under title 11 before the date of the enactment of this Act." As the case at issue was commenced on October 11, 1994, before the date of the enactment of the Act, the former provision of Section 523(a)(2)(C) applies.

2. "Consumer debt" is defined as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8).

The air conditioning repair and carpeting purchased in anticipation of the sale of the home served a family function and do not exhibit fiscal irresponsibility. The purchases were not for luxury goods or services and do not invoke the presumption of nondischargeability. The presumption of nondischargeability is invoked when the debts were for "luxury goods or services" exceeding $500.00 and incurred within 40 days of filing bankruptcy. The charge for the air conditioning repair was made 43 days before the Lariseys' bankruptcy filing and is outside the Section 523(a)(2)(C) presumption of nondischargeability.

■ A presumption of nondischargeability exists pursuant to Section 523(a)(2)(C) for cash advances taken within 20 days before a bankruptcy filing. The cash advance of $3,400.00 taken 15 days before filing bankruptcy invokes this presumption.

■ The legislative history of Section 523(a)(2)(C) reveals it was added to prevent "loading up" or credit buying sprees in contemplation of bankruptcy. S.REP. No. 98–65, 98th Cong. 1st Sess. 58 (1983)[3]. The legislative history indicates the presumption is rebuttable and once the presumption has been invoked, "[t]he burden is upon the debtor to demonstrate that the debt was not incurred in contemplation of discharge in bankruptcy and thus a fraudulent debt." S.REP. No. 98–65, 98th Cong. 1st Sess. 58 (1983).

■ Congress intended the burden shift to the debtor to show intent to repay a debt otherwise presumed nondischargeable. The debtor must demonstrate non-fraudulent intent in connection with that obligation. The rebuttal evidence must raise substantial doubt as to the existence of presumed intent.

*In re Orecchio*, 109 B.R. 285 (Bankr.S.D.Ohio 1989). If the debtor's rebuttal is sufficient and believed, the creditor must prove actual fraudulent intent under Section 523(a)(2)(A) or (B). *Orecchio*, 109 B.R. at 290; *Chase Manhattan Bank. N.A. v. Sparks*, 154 B.R. 766 (N.D.Ala.1993).

The Debtors used the cash advance to repay a loan for previous mortgage payments; past due mortgage payments; and to buy a used car so Nancey Larisey would have a vehicle in which to transport the children. The Lariseys believed the advance could be repaid either through proceeds from the sale of the house or the heavy equipment position, if obtained. The Lariseys were not contemplating bankruptcy at the time the cash advance was taken. The Lariseys successfully rebutted any presumption of nondischargeability by raising substantial doubt as to the existence of presumed intent.

■ Relying on the inference that they allegedly had no intent or ability to repay the debt, Bank One contends the Lariseys incurred the charges through false pretenses, a false representation, or actual fraud. Exceptions to discharge are to be construed strictly to achieve the goal of providing the debtor with the fresh start Congress intended.[4] *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986) (*citing Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)).

■ A credit card issuer assumes the risk of loss by a credit card holder until it is shown the credit card issuer unequivocally and unconditionally revoked the user's right to possession and use of the card and, further, that the user was aware of the revocation. *First Nat'l Bank v. Roddenberry*, 701 F.2d 927, 932 (11th Cir.1983).[5] Finding it

---

3. Senate Report accompanying S.445, Omnibus Bankruptcy Improvement Act of 1983 which was a forerunner to the Bankruptcy Amendment Act of 1984.

4. "[A] central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (*quoting Local Loan Co. v.*

*Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).

5. In *Roddenberry*, the Eleventh Circuit Court of Appeals was construing Section 17(a) of the Bankruptcy Act of 1898, 11 U.S.C. § 35(a)(2), repealed by the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598. Although the Eleventh Circuit Court of Appeals has yet to declare the extent to which *Roddenberry* applies under 11 U.S.C. § 523(a)(2)(A), the Court is guided by the Sixth Circuit Court of Appeals' decision in *In re Ward*, 857 F.2d 1082 (6th Cir.1988). Although factually dissimilar from *Roddenberry*, the Sixth

was unreasonable for the credit card company to rely on the debtor's good faith or implied promise of repayment, the Sixth Circuit cited *In re Hunter*, 780 F.2d 1577 (11th Cir.1986) for the proposition that " 'misplaced trust' is insufficient for nondischargeability." *In re Ward*, 857 F.2d at 1085 (*citing In re Hunter*, 780 F.2d at 1580).

 Bank One seeks to except the indebtedness owed to it by the Lariseys alleging that in addition to the presumption of nondischargeability, that due to their employment situation and prospects of repayment, the Lariseys incurred charges with an intent to defraud Bank One. Excepting the debt from the discharge on the basis of this inference contradicts the strict construction of 11 U.S.C. § 523.

Through the air conditioning repair and new carpeting, the Lariseys increased the likelihood of selling the home and realizing a profit. The Lariseys believed the cash advance could be repaid either through proceeds from the sale of the house or the heavy equipment position, if obtained. The Lariseys were not contemplating bankruptcy at the time the cash advance was taken, and did not contemplate bankruptcy until the weekend prior to filing. The Lariseys did not exceed their $5,300.00 credit limit. At no time prior to the debts incurred with Bank One were their credit privileges revoked. Bank One failed to establish that the debts incurred for air conditioning repair, carpeting, and cash advances were incurred with fraudulent intent. Therefore, the debts owed Bank One are dischargeable.

### JUDGMENT

In conformity with and pursuant to the **Memorandum Opinion** entered contemporaneously herewith, it is

**ORDERED, ADJUDGED and DE-CREED** that the relief sought in the complaint of the Plaintiff, Bank One Lafayette, N.A., objecting to the dischargeability of indebtedness owed to it by the Debtors, Curtis Maurice Larisey and Nancey Geraldine Lari-

sey is **DENIED,** and **JUDGMENT** is entered in favor of the Debtors/Defendants, Curtis Maurice Larisey and Nancey Geraldine Larisey; and it is further

**ORDERED, ADJUDGED and DE-CREED** that the indebtedness owed by the Debtors, Curtis Maurice Larisey and Nancey Geraldine Larisey to Bank One Lafayette, N.A. is **DISCHARGEABLE** and shall be discharged if and when a discharge is granted in this case.

Circuit followed *Roddenberry,* and was decided under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*