**In re Charles E. WILLIAMS, Debtor.**

**HUDSON BELK COMPANY, Plaintiff,**

**v.**

**Charles E. WILLIAMS, Defendant.**

**Bankruptcy No. 88–02557–SN5.
Adv. No. S–89–00072–AP.**

United States Bankruptcy Court,
E.D. North Carolina.

Oct. 20, 1989.

Donald A. Davis, Raleigh, N.C., for debtor.

Brenton D. Adams, Raleigh, N.C., for Hudson Belk Co.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

This adversary proceeding was brought by Hudson Belk Company ("Belk") to determine the dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A) and (C) of a debt from credit card charges owed to Belk by the defendant, Charles E. Williams. Belk's complaint was filed on February 3, 1989; and, after proper notice, a trial was held in Raleigh, North Carolina, on October 4, 1989.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151 and 157, and the General Order of Reference entered by the United

States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I), which this court may hearing and determine.

## FACTS

Charles E. Williams filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on November 4, 1988.[1] As of October 22, 1988, the debtor's account with Belk was in "current and open to buying" status with an average balance of between $500 and $525 for the preceding twelve months. On October 22, October 27, and November 5, 1988, charges totalling $1,058.53 were made to the debtor's Belk account. All of the purchases were made with the debtor's Belk credit card. The charge slips reflected purchases of "Giorgio" and similarly priced perfumes and colognes, cosmetics, greeting cards, stuffed animals, "Gucci" handbags, as well as lingerie and hosiery.

The debtor admits having made the purchases in question on October 22 and 27, but denies having made the purchases on November 5, 1988. He alleges that he lost his Belk credit card on October 27. He inquired at the sales counter where he last used his card and searched his automobile, but did not find his card and did not report the loss to Belk.

None of the charges has been repaid. In its complaint, Belk seeks a determination by this court that the debt totalling $1,058.53 is nondischargeable. The debtor concedes that he made purchases in excess of $500 and that the credit card charges constitute consumer debt. He also concedes that the purchases were made from a single creditor within forty days prior to the time he filed his bankruptcy petition. However, he does not concede that his purchases were of "luxury goods" within the meaning of § 523(a)(2)(C).

Having reviewed the evidence at trial, the court finds that the items which the debtor purchased in October of 1988 were

luxury goods. The debtor testified at trial that one of his purchases was a birthday present for his mother and that the rest were Christmas presents for family members. While that may be so, the debtor has presented no other evidence to persuade the court that the purchases in question can be classified as other than luxury goods.

The court further finds that the debtor purchased these items without intending to pay for them. The debtor testified that when he made the October purchases he had not made the decision to file a bankruptcy petition. Nonetheless, the evidence at trial revealed that the debtor purchased six items during each of his October shopping trips. The total amount charged, $887.39, is significantly greater than his average monthly balance over the previous twelve months. In addition, at least six of these purchases were made after the debtor had consulted his attorney regarding the possibility of filing a bankruptcy petition, and all of the purchases were made when the debtor knew that his financial condition was deteriorating.

The remaining issue for determination by this court is whether the purchases made on November 5, 1988, were made by the debtor, and the court finds as a fact that they were. At trial the debtor was shown four of the charge slips in question. Two were dated October 22, 1988, and two were dated November 5, 1988. Initially, the debtor identified his signature on each of the charge slips. However, when his attention was directed to the dates presented on the charge slips, he stated that he had made purchases only in October and did not recall purchasing the items shown on the November 5 charge slips. He then attempted to draw distinctions between the signatures on the November charge slips and the October 22 charge slips. Nonetheless, the court does not find his testimony on this point credible.

The court does find the testimony of Ronald L. Johnson, Assistant Credit Man-

---

1. At the trial a question was raised as to whether the debtor filed his petition on November 4 or November 7, 1988. The court takes judicial notice that the petition was "filed" stamped by the clerk on November 4, 1988. Fed.R.Evid. 201.

ager and Collection Manager for the plaintiff, to be credible. Mr. Johnson testified that each charge slip bears an electronically printed transaction-date. The date is set by computer and is the same storewide. Mr. Johnson made inquiries as to the possibility of other misdated items, but found none, causing him to conclude that the November 5 date was correct.

## DISCUSSION AND CONCLUSIONS

The dischargeability of the October 22 and October 27 purchases is governed by 11 U.S.C. §§ 523(a)(2)(A) and (C), which provides that the following debts are nondischargeable:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (A) false pretenses, false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> >
> > ... or
> >
> > (C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for 'luxury goods or services' incurred by an individual debtor on or within forty days before the order of relief under this title, ... are presumed to be nondischargeable; 'luxury goods or services' do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor.

The debtor has conceded all of the statutory elements except that of whether he purchased "luxury goods." That term is not defined in the Bankruptcy Code. Courts which have addressed the point, however, have considered whether under the circumstances the purchases were extravagant, indulgent, or nonessential. *In re Faulk*, 69 B.R. 743 (Bankr.N.D.Ind. 1986); *In re Davis*, 56 B.R. 120 (Bankr.D. Mont.1985). Other factors have included whether the items purchased served any important family function and evidenced some fiscal responsibility. *In re Davis* at 122.

In the present case, the debtor admitted having purchased items including designer perfume and lotion costing as much as $63, "Gucci" handbags costing $204 and $250, cosmetics, and stuffed animals. He also admitted that none of the purchases was for his or a dependent's support or maintenance. He presented no evidence as to any important family purpose to be served by these purchases. In fact, he admitted that he purchased each of the items as gifts. Under the circumstances, it is beyond question that the items of these types and amounts were nonessential, indulgent and extravagant, and as such, constitute "luxury goods" within the meaning of § 523(a)(2)(C). *See In re Faulk* at 751.

The creditor having made a showing as to each of the elements in § 523(a)(2)(A) and (C), the presumption arises that the debtor made the October purchases without intending to pay for them. *In re Koch*, 83 B.R. 898, 902 (Bankr.E.D.Pa.1988). As the legislative history discloses, this language was added "to address a type of unconscionable or fraudulent debtor conduct not heretofore considered by the Code—that of loading up." S.Rep. No. 98-65, 98th Cong. 1st Sess. 58 (1983). According to the Senate Report, "[i]n many instances, a debtor will go on a credit buying spree in contemplation of bankruptcy." *Id.* While the presumption is rebuttable, the debtor has not presented sufficient evidence to carry his burden. In fact, he admitted to having made numerous purchases on two occasions in October, raising his average monthly balance by at least 69% over his previous year's balance. He further admitted that, during this time, he was denied further extensions of credit by at least three financial institutions and at least six of his purchases were made after he had consulted his attorney regarding the possibility of filing a bankruptcy petition. *In re Faulk* at 757, citing *Matter of Carpenter*, 53 B.R. 724, 730 (Bankr.N.D. Ga.1985).

Accordingly, based on the foregoing, the court concludes that the debt incurred by the debtor by use of his Belk credit card on

October 22 and October 27, 1988, is nondischargeable and a judgment in favor of Belk shall be entered to that effect.

As to the items charged to the debtor's account on November 5, 1988, the court having found as a fact that the debtor purchased the items in question, the court concludes that this debt is nondischargeable, as well. These purchases were made after the debtor filed his bankruptcy petition and, as such, are not subject to discharge. *See* 11 U.S.C. § 727(b).

Accordingly, a judgment shall be entered to the effect that the debt in the amount of $1,058.53 incurred by the debtor on October 22, October 27, and November 5, 1988, is NONDISCHARGEABLE.