**In re Bruce A. JOHANNSEN, Terri L. Johannsen, Debtors.**

**SEARS, ROEBUCK & COMPANY, Plaintiff,**

v.

**Bruce A. JOHANNSEN and Terri L. Johannsen, Defendants.**

**Bankruptcy No. 92–13915–7. Adv. No. A93–1039–7.**

United States Bankruptcy Court, W.D. Wisconsin.

Sept. 29, 1993.

---

**3.** As noted, the trustee withdrew his motion to abandon pending resolution of the State's mo-

tion.

Roger L. Deffner, Wausau, WI, for plaintiff.

James T. Remington, New Richmond, WI, for defendants.

### MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

"[H]er face and nails are intricately hand painted. Her ensemble is a replica of the original knee-length ... fashion. Underneath, she wears a dainty lingerie set made up of tap pants and a strapless chemise with garters and stockings. Her hair, styled in a 1964 'swirl' is strawberry blond, a ... hair color rarely seen since the mid–1960's."

What appears at first blush to be a written portraiture of the latest fashion trends modeled by a beauty pageant queen is actually a description of the limited edition "Plantation Belle [TM]" Barbie doll. It is found at page 349 of *The Great American Wish Book* for 1992, more commonly known as the Sears Christmas Catalog. Barbie has become an American institution of sorts [1]—a tireless symbol of alluring glamour, grace and gentility. In spite of her remarkable longevity, however, Barbie could actually be considered "over the hill." Born in 1959, Barbie turns 34 this year—thus qualifying her as a "baby boomer." [2]

Although neither Barbie nor her manufacturer is in bankruptcy, this case is about Barbie dolls. The precise matter before the Court is an adversary proceeding filed by Sears, Roebuck & Company (Sears) pursuant to 11 U.S.C. § 523(a)(2)(C). The debtors are Bruce A. and Terri L. Johannsen. Sears seeks to have various debts for items charged by Terri Johannsen on a Sears charge card declared nondischargeable in the debtors' bankruptcy. Roger L. Deffner is representing Sears; the debtors are represented by James T. Remington.

The facts can be briefly stated. In May of 1990 the debtors opened a charge account with Sears; they were assigned account number 01–75379–15439–6. As of October 19, 1992, the account had a zero balance. Shortly thereafter, the following items were charged to the account:

| Date | Item | Amount |
|---|---|---|
| 11/14/92 | Clothes, Barbie & Ken items, Troll house | $ 547.89 |
| 11/21/92 | Barbie case, armoire, trolls | 353.97 |
| 12/15/92 | Barbie | 30.57 |
| 12/16/92 | Barbie | 178.28 |
| | Total: | $1,110.71 |

---

1. The 13th Annual National Barbie Doll Collectors Convention was recently held in Baltimore. 600 collectors from around the world attended; 3,000 more were turned down for lack of space. *See* Katy Kelly, *The pursuit of perfection in plastic*, USA Today, Aug. 27, 1993, at 1D. *See also* Katherine Lanpher, *Girl's fantasies of adult freedom dolled-up by Barbie*, St. Paul Pioneer Press, Aug. 29, 1993, at 3C; Bette Harrison, *More than a toy: Doll collecting grows faster than Barbie's wardrobe*, Eau Claire Leader–Telegram, June 27, 1993, at 2E.

2. One recent article describes Barbie as follows: "[s]he's short and buxom with a tiny waist and remarkably long legs which—despite her age (34)—are cellulite free." *See* Katy Kelly, *The pursuit of perfection in plastic*, USA Today, Aug. 27, 1993, at 1D.

Various credits applied to the debtors' account reduced the current balance due Sears to $1,008.81.

The debtors filed their chapter 7 bankruptcy petition on December 18, 1992—two days after the last charge made with Sears noted above. They seek to discharge their Sears charge account debt in their bankruptcy. An evidentiary hearing was held in Eau Claire on June 21, 1993, at which Terri Johannsen appeared and testified. The Court took the matter under advisement at the conclusion of the hearing.

Sears argues that the debtors' obligation to it is nondischargeable on the basis of 11 U.S.C. §§ 523(a)(2)(A) and (C). Those provisions provide in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

\* \* \* \* \* \*

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, . . . are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor. . . .

See 11 U.S.C. §§ 523(a)(2)(A) and (C) (West 1993). The four charges listed previously were all made within forty days of the bankruptcy filing. The debt incurred as a result of those charges, therefore, is potentially nondischargeable under § 523(a)(2)(C)'s "luxury goods" exception.

Sears contends that the Barbie dolls and accessories and the other items charged were not "reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor." See 11 U.S.C. § 523(a)(2)(C) (West 1993). At the hearing on June 21, Jim Farwell, an employee at the Sears store in Eau Claire, testified that Barbie dolls of the type purchased by the debtor are at the higher end of the price scale of toys sold by Sears.

Terri Johannsen then took the stand and testified that she was married to Bruce Johannsen for 3½ years—from July of 1989 to December of 1992. The debtors have one child—Brittany—who is now seven years old. The divorce decree provided for joint custody; Terri Johannsen received primary placement of Brittany. Ms. Johannsen also stated that the Barbie dolls and other items at issue were purchased during the time she was involved in the divorce proceedings with her former husband. She then testified that she had purchased other collector Barbie dolls shortly before and several days after the bankruptcy filing. These items totaled $265.83; Ms. Johannsen paid cash for them.

The Court was then treated to an actual showing of many of the items purchased within the forty-day period prior to filing. Ms. Johannsen enlightened the Court as to the intricacies of collector Barbie dolls and the myriad of accessories available for them. The items were purchased as Christmas gifts for her daughter and included various collector Barbie dolls, a Barbie armoire and a Barbie display case. The Sears Christmas Catalog was entered as an exhibit; the index identifies no less than 25 pages which contain Barbie dolls and accessories.

On cross-examination, Ms. Johannsen testified that at the time of the relevant purchases she was employed as a waitress earning minimum wage. She was also receiving child support and maintenance. Counsel for Sears clarified through his questions that Ms. Johannsen could have purchased a Barbie doll for $9.99 for her daughter. The debtor responded that the collector Barbies were

investments which would appreciate in value.[3]

On examination by the Court, Ms. Johannsen gave further enlightenment as to collector-edition Barbie dolls. She further stated that her daughter owned approximately 25 Barbie dolls.

In closing argument, Sears' counsel asserted that it is obvious that the expensive Barbie dolls were not necessary for the support of the debtor. This is especially true, he argued, in light of the fact that the debtor's daughter already had 25 dolls to play with. The items are clearly luxury goods, he concluded, and the debt should therefore be nondischargeable.

In response, debtors' counsel argued that only two of the items are arguably luxury goods—the two collector Barbies. He stated that their combined price did not exceed the $500.00 limitation contained in § 523(a)(2)(C). He further asserts that, as Christmas gifts, the items do not constitute luxury goods. In conclusion, debtors' counsel noted that the items at issue were ordered outside of the forty-day period preceding the filing. Although they may have been *received* within that period, they were ordered outside of it. This provides a further basis, he argues, for declaring the debt dischargeable.

The Court has considered the arguments, testimony and exhibits proffered by the parties. The Court concludes that the debt at issue is dischargeable. In reaching this result, the Court need not resort to the arguments of debtors' counsel concerning the timing or the aggregate amount of the purchases. The Court bases its holding on its prior precedent addressing § 523(a)(2)(C)—namely the case of *J.C. Penney Co. v. Leaird (In re Leaird)*, 106 B.R. 177 (Bankr.W.D.Wis.1989).

*Leaird* involved charge card purchases totaling $1,047.00 made by the debtor several weeks prior to the bankruptcy filing. Creditor J.C. Penney argued that the debt representing those purchases should be nondischargeable on the basis of §§ 523(a)(2)(A) and (C). This Court cited from the legislative history of § 523(a)(2)(C) to the effect that "[this] subsection ... creates a rebuttable presumption that any debt incurred by the debtor within 40 days before the filing of the petition has been incurred under circumstances that would make the debt nondischargeable." *In re Leaird,* 106 B.R. 177, 179 (Bankr.W.D.Wis.1989), *citing* S.Rep. No. 98–65, 98th Cong., 1st Sess. 58 (1983). This Court held in *Leaird* that the creditor had indeed established the elements of § 523(a)(2)(C), but it further held that the debtors had successfully rebutted the presumption of fraudulent intent created thereby. 106 B.R. at 179–80. The debtors did so by testifying that the purchases were made compulsively and not in contemplation of bankruptcy. They further testified that the filing was precipitated by their receipt of a deficiency judgment notice from the Veterans Administration. *Id.* at 180. The Court found the debtors to be credible and, since the plaintiff-creditor offered no further evidence of fraudulent intent, found the debt to be dischargeable. *Id.*

Turning to the facts at issue here, the debtor testified that she did not intend to file bankruptcy at the time she ordered the items. She also testified that her husband told her at the end of November that he intended to file bankruptcy. Because of this, Ms. Johannsen's divorce attorney advised her to file with him and she subsequently did so. The debtor further testified that, although she did not have the money to pay for the items when they arrived, she intended to make monthly payments for them on her Sears account. The Court found the debtor to be credible when she gave this testimony.

Similar to the *Leaird* case, then, the Court finds there is insufficient evidence to warrant a finding of fraudulent intent on the part of the debtor. Although this case at first

---

**3.** Recent articles support the debtor's contention. A mint-condition 1959 pony-tailed Barbie wearing a black-and-white bathing suit recently sold at auction for $4,000. *See* Katy Kelly, *The pursuit of perfection in plastic,* USA Today, Aug. 27, 1993, at 2D. The Court adds as an aside that Ken dolls have not enjoyed a similar popularity among collectors. " 'Ken is not worth much,' explains Marl Davidson [a 'mega-dealer' from Bradenton, Florida]. 'Even the flocked-hair Ken will only command $300 tops ... most people want one (Ken) in a tuxedo, and they're happy.' " *Id.*

**332**

glance appeared to be a classic case for § 523(a)(2)(C)'s luxury goods exception, subsequent investigation and testimony revealed no evidence of such intent in making the relevant purchases. As this Court held in *Leaird,* such evidence is required for a finding of nondischargeability pursuant to § 523(a)(2)(C). *See Leaird,* 106 B.R. at 180. Although some may consider Ms. Johannsen's purchases irresponsible or even foolish in light of her financial circumstances (although serious Barbie collectors would no doubt take umbrage at this), those are not the standards by which nondischargeability is determined. Given the absence of fraudulent intent, moreover, this was clearly not a case of "loading up"—where a debtor goes on a credit buying spree in contemplation of bankruptcy. The legislative history to § 523(a)(2)(C) indicates that this was the type of behavior that Congress was attempting to discourage in enacting that provision. *See* S.Rep. No. 98–65, 98th Cong., 1st Sess. 58 (1983). ("Section 523 is amended and expanded to address a type of unconscionable or fraudulent debtor conduct not heretofore considered by the code—that of loading up.") There was no such conduct by the debtor here.

Creditor Sears' complaint is accordingly dismissed; the debt of $1,008.81 is therefore dischargeable in the debtors' bankruptcy.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.