**In re Irene VERNON, Debtor.**

**CARROLL and SAIN, Plaintiff,**

**v.**

**Irene VERNON, Defendant.**

**Bankruptcy No. 95 B 08527.
Adv. No. 95 A 00741.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 26, 1996.

Terrence J. McConnville, Carroll and Sain, Chicago, IL, for Plaintiff.

Edwin L. Field, Thomas E. Springer, Feld & Korrub, Addison, IL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to the bankruptcy proceeding of defendant Irene Vernon ("Defendant" or "Debtor") filed by her under Chapter 7 of the Bankruptcy Code, Title 11 U.S.C. The Plaintiff law firm seeks to have her debt due to it found non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

Following trial, both sides having rested and the Court having considered evidence admitted and final argument of the parties, the Court now makes and enters the following Findings of Fact and Conclusions of Law. Pursuant thereto, judgment is separately entered for Defendant.

### FINDINGS OF FACT

1. Plaintiff Carroll and Sain is a law firm partnership which has its principal place of business located in Chicago, Illinois. Plaintiff's practice includes, but is not limited to, representation in the area of domestic relations law.

2. Debtor-defendant Irene Vernon is an individual whose residence at the date of her filing in bankruptcy under Chapter 7 of the Bankruptcy Code was in the Village of Palatine, Cook County, Illinois.

3. Irene Vernon sought and employed the Plaintiff law firm to represent her interests with respect to her divorce proceedings in the Circuit Court of Cook County, filed in 1993 under Case No. 93 D 803.

4. The Plaintiff law firm represented Irene Vernon with respect to her divorce proceedings between June 1994 and April 1995.

5. Irene Vernon was informed of and was aware of the Plaintiff law firm's billing rates and billing arrangements when she retained that firm.

6. On or about December 1994 or January 1995, the debtor-defendant inquired of one of the plaintiff's attorneys as to what effect bankruptcy would have on her property and marital rights under the divorce proceeding. Plaintiff thereby learned of her consideration of a bankruptcy filing to better her economic position following entry of any decree dissolving her marriage.

7. Carroll and Sain, pursuant to the agreement with defendant regarding representation, sent billing statements to her. These billing statements were dated and claimed the amounts stated as follows:

July 19, 1994 Credit Balance ........$(1,371.25)
August 12, 1994.....................$    313.75
September 16, 1994 .................$    364.00
November 29, 1994..................$ 2,097.50
January 12, 1995....................$ 2,485.00
January 19, 1995 ....................$ 2,592.50
March 28, 1995 ....................$ 4,005.00
May 16, 1995 ......................$ 9,476.25

Defendant did not contest the amounts of those bills at the time. While she expressed surprise at the cumulative amounts thereof during the trial here, no defense was offered as to their reasonableness or necessity.

8. Against those bills, Irene Vernon made the following payments to plaintiff law firm on or about the dates indicated:

July 15, 1994 ......................$1,500.00
September 23, 1994 .................$    313.75
November 28, 1994 .................$    364.00
February 23, 1995..................$    500.00
April 12, 1995 .....................$1,000.00

9. During the months of March and April 1995, Plaintiff's attorneys performed the bulk of their legal services for Defendant Irene Vernon, including several lengthy telephone conferences with Defendant and opposing counsel; many revisions of the proposed marital settlement agreement and judgment; and trial preparation for the impending trial on a date set by the state court judge.

10. In early April 1995, shortly before entry of the final decree of marital dissolution, and while the Plaintiff lawyers were heavily engaged in work on behalf of Defendant, she again discussed with one attorney in the plaintiff law firm the possibility of filing bankruptcy following her impending divorce.

11. Being thereby on repeated notice that their client was considering the filing of a bankruptcy proceeding to obtain discharge of her debts, debts which would include their fees, Plaintiff's attorneys nonetheless concluded their work for her. The Plaintiff law firm did not at any time seek to withdraw as counsel for Irene Vernon in the state court divorce proceedings or to obtain a continuance of the impending trial.

12. On April 17, 1995, a Judgment for Dissolution of Marriage was entered by agreement in the divorce proceeding, all property issues between Defendant and her spouse having by then been resolved.

13. Defendant did not receive notice or billing of her final legal fees in the divorce proceeding from Plaintiff until receipt of the law firm's Notice of Motion as to its Petition for Fees and final bill on or around May 16, 1995. Therefore, she did not learn the full extent of fees incurred subsequent to the March 28 fee bill until that May date.

14. On or about April 21, 1995, Defendant Irene Vernon met with her bankruptcy counsel. The evidence does not show that she met with that counsel at any earlier date. She filed her petition for relief under Chapter 7 of the Bankruptcy Code (the "Code") on April 28, 1995, 11 U.S.C. § 101 *et seq.*

15. At the time of the filing of her bankruptcy petition, Debtor had custody of two dependent children, ages 12 and 14 years old. The state court decree dissolving marriage provided for support by Defendant's husband of those children, and also apportioned certain property to her.

16. Debtor-Defendant was being contacted by creditors for collection purposes from approximately late 1994 through the date of the filing of her bankruptcy petition, and she was unable to manage her debt or fend off those collection efforts, even though some (but not all) of her creditors were to be paid by her former husband as part of the marriage dissolution decree. There were additional debts and liabilities not subject to payment under that decree. All of her possible debts were scheduled in her bankruptcy petition.

17. When the bankruptcy proceeding was filed, Debtor was employed. However, she was concerned that, if her ex-spouse failed to pay their joint obligations as set forth in the final decree, she would be subject to collection for same. Moreover, Debtor was then concerned about the potential for losing her job due to threats of collection efforts from several sources. Debtor was reasonably concerned that her modest income would never be sufficient to manage all the debt she was liable for, and therefore felt vulnerable to those collection efforts.

18. Any facts set forth in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

1. Jurisdiction is conferred on this Court under 28 U.S.C. § 1334. This proceeding is a core proceeding under 28 U.S.C. § 157, and was referred to the Bankruptcy Court under Rules of the District Court.

2. Plaintiff's Amended Complaint seeks to bar dischargeability of the debt it is owed by Defendant under 11 U.S.C. § 523(a)(2)(A), which provides in pertinent part that:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, false representations, or actual fraud, other than a statement respecting the Debtor's or an insider's financial conditions;

3. Title 11 U.S.C. § 523(a)(2)(C) provides in pertinent part that:

for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,000 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title ... are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support of maintenance of the debtor or a dependent of the debtor ....

### Section 523(a)(2)(C) Does Not Apply Here

4. It is the plaintiff's burden to show that the debtor's obligation, or any part of it, falls within the conditions of § 523(a)(2)(C) to obtain benefit of the statutory presumption of non-dischargeability. *Notre Dame Federal Credit Union v. Tondreau (In re Tondreau)*, 117 B.R. 397, 400 (Bankr.N.D.Ind.1989). In this case, Plaintiff has the burden of showing that its legal services amounted to "luxury ... services" other than "services reasonably acquired for the support of maintenance of the debtor or a dependent of the debtor ...."

5. "Luxury goods and services" are not defined in the Code. Opinions dealing with the term "luxury" in § 523(a)(2)(C) have, however, considered whether under circumstances of each particular case the purchases or transactions were "extravagant," "indulgent," or "nonessential." *General Motors Acceptance Corporation v. McDonald (In re McDonald)*, 129 B.R. 279 (Bankr. M.D.Fla.1991); *(Hudson Belk Company v. Williams (In re Williams)*, 106 B.R. 87 (Bankr.E.D.N.C.1989); *Sears Roebuck and Company v. Faulk (In re Faulk)*, 69 B.R. 743 (Bankr.N.D.Ind.1986); *First Security Bank of Idaho v. Davis (In re Davis)*, 56 B.R. 120 (Bankr.D.Mont.1985). The circumstances surrounding the purchase or transaction in each case must be considered to determine whether the transactions should be classified as a "luxury." *McDonald*, 129 B.R. at 283; *Faulk*, 69 B.R. at 751. In addition, in determining if the item is a luxury good, one must also consider whether the item purchased (or transaction) served any significant family function or whether the transaction evidenced some fiscal irresponsibility. *McDonald*, 129 B.R. at 283 (citations omitted).

6. The provision of legal services for divorce are not for some extravagant, indulgent, or non-essential object. Men and women, whose marriage has collapsed and who seek divorce, are seeking to end a condition destructive of their lives and to arrange care for their children and adjust property rights, not to obtain some luxury. Divorce serves a necessary family function—to end a dysfunctional family and resolve obligations of each spouse. Thus, the services involved here were not of a luxury nature. Indeed, legal fees and expenses incurred during divorce proceedings do not generally qualify as "luxury goods or services" within the meaning of § 523(a)(2)(C). *See Montgomery Ward and Company v. Blackburn (In re Blackburn)*, 68 B.R. 870, 873 (Bankr.N.D.Ind.1987).

7. Moreover, the Code makes clear that the term "luxury goods and services" does not refer to goods or services reasonably acquired for support or maintenance of the debtor or a dependent of the debtor. 11 U.S.C. § 523(a)(2)(C).

8. Legal services during divorce proceedings may certainly qualify as services reasonably acquired to obtain the support or maintenance of a debtor or dependent of a debtor within the meaning of § 523(a)(2)(C), thereby falling outside the meaning of "luxury ... services." In this case, as shown by the final dissolution decree and property agreement, much of the services rendered by Plaintiff went to ensure support for Defendant's two children and, to a lesser extent, to apportion property to her.

9. Even if Plaintiff had shown that it provided Defendant with a "luxury ... service," the rebuttable presumption created under § 523(a)(2)(C) is rebutted by the evidence here establishing that Debtor–Defendant intended to pay the debt to Plaintiff at the time the legal services were being performed. *In re Faulk,* 69 B.R. at 751–52. Evidence of repeated payments by Debtor to the Plaintiff over the nine months prior to the filing of her bankruptcy petition rebuts the contention that Debtor had no intention of paying the complaining creditor at the time it was providing services. The burden of proof is not shifted by the presumption, and ultimate risk of non-persuasion remains throughout the proceedings upon the Plaintiff. *In re Faulk,* 69 B.R. at 751–52.

### Elements Under § 523(a)(2)

10. Section 523(a)(2)(A) bars discharge of any debt to the extent obtained by false pretenses, a false representation, or actual fraud. The Plaintiff rests its case on assertion of a false representation by Defendant. In order to sustain its case under § 523(a)(2), Plaintiff must establish each of five elements: (i) that Debtor–Defendant made a representation; (ii) that at the time the representation was made, she knew it was false; (iii) that she made the false representation with the intention and purpose of deceiving Plaintiff; (iv) that Plaintiff justifiably relied on the representation and such reliance was justifiably founded; and (v) that Plaintiff sustained a loss or damage as the proximate consequence of the false representation having been made. *See Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (as to the most recent analysis regarding only the element of "reliance" in a § 523(a) action); *Mayer v. Spanel International,* 51 F.3d 670 (7th Cir.1995); *In re Scarlata,* 979 F.2d 521 (7th Cir.1992).

11. The burden of proving each of the elements is on the party claiming the exception to discharge. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Scarlata,* 979 F.2d at 529. Each element must be established by a preponderance of the evidence. *Grogan,* 498 U.S. at 285, 111 S.Ct. at 658.

12. Exceptions to dischargeability of debtor are to be construed strictly against a creditor and liberally in favor of a debtor. *Scarlata,* 979 F.2d at 524; *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985). The exceptions to dischargeability must be narrowly construed against the creditor's objections and confined to those plainly expressed in the Code. *In re Faulk,* 69 B.R. at 748. This is done to effectuate the fresh start policies and overriding purpose of the Bankruptcy Code to provide a release of the Debtor from the burden of indebtedness. *Perez v. Campbell,* 402 U.S. 637, 659, 91 S.Ct. 1704, 1716, 29 L.Ed.2d 233 (1971); *In re Faulk,* 69 B.R. at 748; *ITT Diversified Credit Corp. v. Nicoll (In re Nicoll),* 42 B.R. 87 (Bankr.N.D.Ill.1984).

### Lack of false representation or intent to deceive

13. The alleged false representation must encompass statements that falsely purport to depict current or past facts. A promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise is subsequently breached. *In re Allison,* 960 F.2d 481 (5th Cir.1992); *In re Bercier,* 934 F.2d 689 (5th Cir.1991); 3 Collier on Bankruptcy (15th ed.) ¶ 523.08(4). Absent more, a promise to be carried out in the future is not sufficient to make a debt non-dischargeable. The mere proof of an unfulfilled promise is insufficient to show fraudulent intent under § 523(a)(2). *Dawley v. Gould (In re Gould),* 73 B.R. 225 (Bankr.N.D.N.Y.1987).

14. To qualify under § 523(a)(2)(A), the representation must be made with fraud-

ulent intent; the conduct must therefore involve some intended wrong. *Gabellini v. Rega*, 724 F.2d 579 (7th Cir.1984); *Carini v. Matera*, 592 F.2d 378, 380 (7th Cir.1979).

■ 15. Mere negligence, poor business judgment, or even fraud implied by law is insufficient conduct to be actionable under § 523(a)(2)(A). *See Western Union Corporation v. Ketaner (In re Ketaner)*, 154 B.R. 459, 465 (Bankr.E.D.Va.1992) (any alleged recklessness must exceed negligence and rise to the level of reckless disregard for the truth); *In re Sutton*, 39 B.R. 390, 397 (Bankr.M.D.Tenn.1984) (the action must be intentional and merely reckless representations are insufficient); and *Smith v. Schwartz (In re Schwartz)*, 130 B.R. 416 (Bankr.S.D.N.Y.1991).

■ 16. Where there is room for an inference of honest intent, the question of fraudulent intent must be resolved in favor of the debtor. *Buckeye Candy Company v. Ritzer (In re Ritzer)*, 105 B.R. 424, 428 (Bankr.S.D.Ohio 1989); *Wilson v. Mettetal (In re Mettetal)*, 41 B.R. 80, 89 (Bankr. E.Tenn.1984); *Heinold Commodities & Securities v. Hunt (In re Hunt)*, 30 B.R. 425, 439 (Bankr.N.D.Tenn.1983).

■ 17. One can imagine a set of facts wherein some client might give her lawyer a clear promise of payment of known fees before legal work was performed, despite her secret intent at the time, evidenced by contemporaneous contact with bankruptcy counsel or otherwise, to discharge her debt. Under some circumstances, that could constitute a scheme to bilk the lawyers after inducing them by that promise to complete work. Such a promise and circumstance might well qualify under § 523(a)(2)(A). But here the evidence did not demonstrate any such promise or circumstance. Defendant knew the billing rate, but not the full bill at the time of work performed in March and April of 1995. Until then, she had paid a total of $2,677.75 through several payments for fees and expenses, and she made a further payment of $1,000.00 on April 12 (five days prior to the divorce decree) after receiving the March bill. But, while she knew and agreed to the billing firm's rates and terms, there was no explicit promise by her to pay the balance due that might be billed in the future. Indeed, she did not know the full balance due until after the lawyers' work was completed. Moreover, Defendant's decision to file in bankruptcy became a firm decision because she was pursued by bill collectors. The evidence did not show any consultation with bankruptcy counsel until after the divorce, and that consultation came about before she received the final (and largest) bill from Plaintiff. In short, the Plaintiff did not prove by a preponderance of evidence that Defendant knowingly made any false representation of future payment to induce future legal services while knowing of a fixed intent to discharge the debt for those services, or that she intended in any way to deceive her counsel prior to completion of their work.

### *Absence of Justifiable Reliance*

■ 18. Reliance by the creditor must be both actual and justifiable under the circumstances and facts of the case. *Field v. Mans*, —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

■ 19. A creditor who possesses "access to the truth" and has been alerted to facts that would alert to the truth may be denied recovery of judgment for dischargeability of debt under § 523(a)(2)(A) for lack of justifiable reliance on a purported misrepresentation. *Mayer v. Spanel International Ltd.*, 51 F.3d 670, 676 (7th Cir.1995). " '. . . [W]here, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, . . . he is required to make an investigation of his own.' " *Field v. Mans*, —— U.S. ——, ——, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995), *citing* W. Prosser, *Law of Torts*, s108, p. 718 (4th ed. 1971). *See also* discussion of this in *AT & T Universal Card Services v. Ali* (Jan. 10, 1996) (No. 95 A 505) and *FCC National Bank v. Tanvir Ali* (95 A 365) (Bankr. N.D.Ill., Jan. 10, 1996) (Ginsberg, J.). Here, the Plaintiff law firm was on repeated and direct notice that Defendant was considering bankruptcy following the divorce. That clearly posed a threat to its fees, both those

earned in the past and those about to be earned. But the lawyers continued their work on her behalf despite that knowledge without seeking a trial continuance or some protection for their fees. Even if there had been a promise to pay made by Debtor, Plaintiff did not justifiably rely on any such promise in light of the repeated warnings about her possible bankruptcy filing.

20. Discharge exceptions are to be narrowly construed, and improvident creditors are not to be afforded special protections in bankruptcy for the assumption of common business risks. *In re Faulk,* 69 B.R. at 753–52 (*citing First Nat'l Bank of Mobile v. Roddenberry,* 701 F.2d 927 (11th Cir.1983)). It may well be said here that the lawyers pursued their duties to their client more diligently than they pursued their own interests. That is a credit to our profession, but the circumstances here do not demonstrate grounds to bar dischargeability.

### *CONCLUSION*

Pursuant to the foregoing, Plaintiff does not prevail. By separate order, judgment is entered this date in favor of Defendant.