**In re Rocco J. FULGINITI, Debtor.**

**BANK ONE COLUMBUS, N.A., Plaintiff,**

v.

**Rocco J. FULGINITI, Defendant.**

**Bankruptcy No. 96–15138DAS.**
**Adv. No. 96–1032DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 25, 1996.

Alan M. Bredt, Philadelphia, PA, for Debtor.

Edward J. O'Brien, Olin, Neil & Haltrecht, West Chester, PA, for Plaintiff.

Christine C. Shubert, Trustee, Tabernacle, NJ.

Frederic Baker, Ass't U.S. Trustee, Philadelphia, PA.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

## A. INTRODUCTION

The instant proceeding represents our first encounter with 11 U.S.C. § 523(a)(2)(C) since our decision almost ten years ago in *In re Woods*, 66 B.R. 984 (Bankr.E.D.Pa.1986) ("*Woods I*"). In *Woods I* we held that § 523(a)(2)(C) did not apply to the facts at bar. *Id.* at 989–91. Here, § 523(a)(2)(C) does apply as to part of the Plaintiff's claim, because the Debtor made a cash advance of $2,380 on the Plaintiff's credit card just thirty-two (32) days before he filed this Chapter 7 case. However, we conclude that the Debtor has rebutted the presumption that he did not intend to repay the Plaintiff with his credible testimony that he intended to repay the cash advance at the time he requested it, supported by his making the only payment due on his account to the Plaintiff prior to his filing.

## B. FACTUAL AND PROCEDURAL HISTORY

ROCCO FULGINITI ("the Debtor") filed the underlying individual Chapter 7 bankruptcy case on June 4, 1996. On August 29, 1996, BANK ONE COLUMBUS, N.A. ("the Plaintiff"), filed the instant proceeding ("the Proceeding") challenging the dischargeability of the Defendant's indebtedness to it on its credit card of $7,638.07 under 11 U.S.C. § 523(a)(2)(A), and $2,380.00 of that balance, incurred in a cash advance of May 3, 1996, under 11 U.S.C. § 523(a)(2)(C).

The Proceeding was tried before us on October 10, 1996. Simultaneous post-trial

briefs were accepted from the parties on October 24, 1996.

The only witnesses at trial were Jody M. Cundiff, the Plaintiff's roving bank card special collections supervisor, and the Debtor. Cundiff testified that the credit card in question had originally been issued to the Debtor's wife, known as Angela Dutch ("the Wife") prior to her marriage to the Debtor, on September 25, 1985. The Debtor was not added as a signer of the account until May 5, 1994. On January 30, 1996, he became the only signer on the account.

Cundiff also indicated that the Debtor's credit limit had been extended to $7,600 in April or May 1996 (the prior limit was not indicated). She further explained, however, that the Plaintiff allowed any customer to exceed the limit by twenty (20%) percent before refusing further credit to that party.

The Debtor's testimony, crucial in such cases, indicated that his sole source of income for the past six years has been bi-weekly worker's compensation benefits of $265. However, he stated that the Wife worked and earned $200 weekly. The family includes one child of each adult by former relationships.

The Debtor stated that he used $1,328 of the $2,380 cash advance in issue to pay for a requisite purchase, made on March 4, 1996, of replacements of irreparable windows to the home of the Debtor's family. The balance of the advance was used to pay other bills. The Debtor's Schedules indicate that these bills included sixteen (16) other credit cards on which a total of about $35,000 was owing on the date of filing.

The Debtor indicated that he and the Wife, who he stated was very nervous about the family's financial condition, conscientiously reviewed their outstanding bills every month and had, prior to their bankruptcy, remained current on all of them. The Debtor testified that he fully intended to keep making the necessary payments on all of his credit cards, producing numerous checks written to creditors in May 1996, including a payment of $104.00 to the Plaintiff on May 12, 1996.

With respect to his bankruptcy filing, the Debtor testified that he had believed that his disability disqualified him from filing until he was referred by his sister-in-law's mother, also a client of the Debtor's counsel, to the said counsel about two or three days before the bankruptcy filing. There was no explanation for counsel's not delaying the filing except his unawareness of the date of the cash advance of May 3, 1996.

At the close of the testimony, we indicated that the Debtor appeared to be quite sincere and that we would be inclined to rule in the Debtor's favor at that time if only § 523(a)(2)(A) were at issue. However, we were uncertain how difficult the case law had established that it should be for a debtor to overcome the presumption set forth in § 523(a)(2)(C). Our review of the record reinforces our spontaneous assessment of the Debtor as an unsophisticated, straightforward person who was a most credible witness.

## C. DISCUSSION

■ The Proceeding is brought under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(C), which provide as follows:

§ 523. **Exceptions to discharge**

(a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . . .

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,000 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions

of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable; ...

We previously held that

[i]t is well-established that, to succeed in a § 523(a)(2)(A) claim, the plaintiff must prove, by a preponderance of the evidence, *see Grogan v. Garner,* 498 U.S. 279, 282–89, 111 S.Ct. 654, 656–61, 112 L.Ed.2d 755 (1991), each of the following five elements:

"(1) that the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; and

(5) that the creditor sustained the alleged loss and damages as a proximate result of the representations having been made."

*In re Naimo,* 175 B.R. 878, 881 (Bankr. E.D.Pa.1994), *aff'd,* 1995 WL 163598 (E.D.Pa. April, 1995), quoting *In re Cirineo,* 110 B.R. 754, 757–58 (Bankr.E.D.Pa. 1990). *See also In re McDonald,* 177 B.R. 212, 215 (Bankr.E.D.Pa.1994); *In re Bergman,* 103 B.R. 660, 670–71 (Bankr.E.D.Pa. 1989); *In re Butler,* 86 B.R. 829, 830–31 (Bankr.E.D.Pa.1988); *In re Mistry,* 77 B.R. 507, 511 (Bankr.E.D.Pa.1987), *aff'd sub nom. Writer v. Mistry,* C.A. No. 87–6466 (E.D.Pa. Feb. 9, 1988); *In re Woods,* 66 B.R. 984, 988 (Bankr.E.D.Pa.1986); *In re Gelfand,* 47 B.R. 876, 879 (Bankr. E.D.Pa.1985); and *In re Brackin,* 23 B.R. 984, 985 (Bankr.E.D.Pa.1982).

*In re Graham,* 194 B.R. 369, 372 (Bankr. E.D.Pa.1996). *See also In re Anastas,* 94 F.3d 1280, 1284 (9th Cir.1996); *In re Blanchard,* 201 B.R. 108, 114–15 (Bankr.E.D.Pa. 1996); and *In re Chryst,* 177 B.R. 486, 492 (Bankr.E.D.Pa.1994).

Section 523(a)(2)(C) clearly apples here as to the Debtor's $2,380 cash advance of May 3, 1996. Irrespective of the fact that the Debtor did not utilize the cash advance to purchase "luxury goods," the circumstances where § 523(a)(2)(C) applies are set forth in the disjunctive, and the Debtor indisputably received a cash advance of more than $1,000 within 60 days of his Chapter 7 bankruptcy filing.

Section 523(a)(2)(C) creates a presumption that, "for purposes of [§ 523(a)(2)(A)]," a cash advance incurred within 60 days of a debtor's bankruptcy filing is nondischargeable. We now know that case authority establishes that the presumption affects only the proof of the third of the five elements of a § 523(a)(2)(A) action, *i.e.,* the debtor's fraudulent intent. *See In re Larisey,* 185 B.R. 877, 881 (Bankr.M.D.Fla.1995); *In re McDonald,* 129 B.R. 279, 283 (Bankr. M.D.Fla.1991); *In re Koch,* 83 B.R. 898, 902 (Bankr.E.D.Pa.1988) (FOX, J.); and S. Resnicoff, *Barring Bankruptcy Banditry: Revision of Section 523(a)(2)(C),* 7 BANKR. DEV.J. 427, 441, 449 (1990) (cited hereinafter as "Resnicoff"). It is also well-established that the presumption is rebuttable. *See In re Sparks,* 154 B.R. 766, 768 (N.D.Ala.1993); *In re Vernon,* 192 B.R. 165, 171 (Bankr. N.D.Ill.1996) (presumption overcome); *In re Johannsen,* 160 B.R. 328, 331 (Bankr. W.D.Wis.1993) (presumption overcome); *McDonald, supra,* 129 B.R. at 283; *Koch, supra,* 83 B.R. at 902; *In re Leaird,* 106 B.R. 177, 179–80 (Bankr.W.D.Wis.1989) (presumption overcome); *In re Faulk,* 69 B.R. 743, 752 (Bankr.N.D.Ind.1986); and Resnicoff, *supra,* 7 BANKR.DEV.J. at 441 & n. 62 ("Courts generally allow the presumption to be rebutted by minimal evidence.").

The following complete recitation of the legislative history of § 523(a)(2)(C) is included in *Faulk, supra,* 69 B.R. at 751:

"Section 523 is amended and expanded to address a type of unconscionable or fraudulent debtor conduct not heretofore considered by the code—that of loading up. In many instances, a debtor will go on a credit buying spree in contemplation of bankruptcy. The new subsection (d) creates a rebuttable presumption that any debt incurred by the debtor within 40 days before the filing of the petition has been incurred under the circumstances that would make the debt nondischargeable. Only that portion of a debt which was

incurred within the 40–day time period is subject to this presumption. The burden is upon the debtor to demonstrate that the debt was not incurred in contemplation of discharge in bankruptcy and thus a fraudulent debt. As the language makes clear, debts incurred for expenses reasonably necessary for support of the debtor and the debtor's dependents are not covered by the presumption."

Senate Report Ho 98–65, 98th Cong., 1st Sess 58 (1985); Senate Report Accompanying S445, Omnibus Bankruptcy Improvements Act of 1983, which was a forerunner of Bankruptcy Amendment Act of 1984. Reprinted 4 *Norton Bankruptcy Law and Practice, Annotated Legislative History,* § 523, P. *106* (1985 Annual Cumulative Supplement, Callahan and Company, 1983).

Moreover, as Judge Fox states in *Koch, supra,* 83 B.R. at 902:

Although this subsection establishes a presumption in favor of the creditor, the existence of this presumption does not shift the burden of proof from the creditor, it only shifts the initial burden of production to the debtor. Bankr.Rule 9017 (incorporating Fed.R.Evid. 301). *See also* Fed. R.Evid. 1101(a).... Thus, the presumption of § 523(a)(2)(C) only shifts to the debtor the initial burden of production regarding the issue of intent; it does not, by itself, shift the ultimate burden of proof or the initial burden of production on any other issues.

*Accord, Leaird, supra,* 106 B.R. at 179–80; and *Faulk, supra,* 69 B.R. at 752.

Thus, in applying § 523(a)(2)(C) to the instant facts, the only practical effect of the presumption was to require the Debtor to take the stand to attempt to rebut the presumption that this conduct was fraudulent. Once he did so, and he was credible and successful in so doing, the presumption failed to assist the Plaintiff any longer. *Cf. In re Old World Cone Co.,* 119 B.R. 473, 477–78 (Bankr.E.D.Pa.1990) (overcoming a presumption "bursts" the presumption "bubble" entirely). We also note that there was absolutely no indication that the Debtor "loaded up" on his debts just prior to bankruptcy.

Rather, it is apparent that, with the complicity of seventeen (17) credit card issuers such as the Plaintiff, he and the Wife had been overloaded with credit for a considerable period of time. The cash advance of May 3, 1996, can therefore be likened to a straw that overloaded and, figuratively speaking, broke the Debtor's back.

We note that the facts of this case compare quite favorably with those of *Vernon, supra; Johannsen, supra;* and *Leaird, supra,* which exemplify Resnicoff's observation that "minimal evidence" may be sufficient to overcome the § 523(a)(2)(C) presumption. In *Vernon* the debtor's reported payments to the plaintiff in the nine months prior to the debtor's filing sufficed. 192 B.R. at 171. The instant Debtor testified without rebuttal that he had never missed a payment to the Plaintiff prior to filing bankruptcy.

In *Johannsen* the debtor purchased the ultimate luxury goods from Sears, Roebuck and Co.—collection-edition Barbie dolls and accessories valued at over $1,100. Although employed as a waitress earning "minimum wage" and continuing to make credit card purchases at Sears just two days before the bankruptcy was filed, 160 B.R. at 330, the debtor was excused because her estranged husband was found to have been the impetus for the bankruptcy. *Id.* at 331. The instant Debtor purchased necessities on March 4, 1996, well prior to the 60–day period.

In *Leaird* the court was impressed with the questionable sequence of the debtor's making "impulsive" purchases of household goods on February 26, visiting bankruptcy counsel for the first time on March 3, and filing on March 21. 106 B.R. at 178, 180. The instant Debtor very credibly testified that he had not considered bankruptcy at all when he made the cash advance of May 3, 1996; used the funds mostly for payment of windows purchased on March 4, 1996; made a payment thereafter; and did not consult bankruptcy counsel until about three weeks later. *But cf. In re Claar,* 72 B.R. 319, 322 (Bankr.M.D.Fla.1987) (testimony that a debtor intended to repay a cash advance to purchase a lifetime membership at a campground sponsored by Jim and Tam-

my Bakker, disbelieved by the court, held not sufficient to overcome the § 523(a)(2)(C) presumption).

We therefore conclude that the Debtor has overcome the § 523(a)(2)(C) presumption as to the $2,380 cash advance of May 3, 1996. The only issue remaining, concerning which we indicated our strong inclinations in the Debtor's favor at the close of the trial, is whether that advance, or any part of the $7,638.07 total indebtedness of the Debtor to the Plaintiff, should be declared nondischargeable under § 523(a)(2)(A).

 For all practical purposes, our finding that the Debtor rebutted a presumption in favor of the Plaintiff as to the crucial third element of the five required to be proven by the Plaintiff to sustain a § 523(a)(2)(A) claim on the most questionable of the Debtor's advances from the Plaintiff resolves this issue favorably to the Debtor as to all of the Plaintiff's claims. As we held in *Cirineo, supra,* 110 B.R. at 759, 762, the critical element in a § 523(a)(2)(A) credit card case is ascertainment of the debtor's subjective intention to repay the debt at the time that the card is used. *See also Anastas,* 94 F.3d at 1285–86 (the critical misrepresentation at issue in credit card cases is the debtor's intent to repay, not the debtor's ability to repay).

The Plaintiff suggested, at trial, that we employ a twelve-factor test referenced, but not utilized by us, in *Cirineo, supra,* 110 B.R. at 758–59, to measure the Debtor's fraudulent intent. *See also In re Eashai,* 87 F.3d 1082, 1087–88 (9th Cir.1996). We believe, like the court in *Anastas,* 94 F.3d at 1284, that these twelve "objective" factors can be useful in assessing a debtor's subjective intention to repay, but cannot be substituted for making the judgment of the debtor's subjective intent on the basis of whatever we find helpful in the record. *Cirineo, supra,* 110 B.R. at 759. Where, as here, we can make the determination of the Debtor's subjective intention without resort to such factors, we will proceed to do so.

The Plaintiff presented the testimony of Cundiff regarding the changes of the signer of the card from the Wife, to both her and the Debtor, and then to only the Debtor in January 1996, as evidence of possible "bankruptcy planning" by the Debtor. We reject

this hypothesis because we credit the Debtor's testimony that, when he became the sole signatory on the account in January 1996, he believed that he was ineligible for bankruptcy due to his disability. Furthermore, there is no reason why, if she were a signer, the Wife could not have easily filed this bankruptcy case jointly with the Debtor.

We can readily distinguish this case of a debtor who slowly sinks into overextension or credit from that of the atypical, proven "credit card kiter" in *Eashai, supra,* 87 F.3d at 1085. *See Anastas,* 94 F.3d at 1284; and *In re Klock, Household Credit Services, Inc. v. Klock,* Bankr. No. 96–15253 DAS, Adv. No. 96–1028DAS (Bankr.E.D.Pa. Oct. 9, 1996) (debtors amassing over $100,000 in credit card debts, requiring minimum monthly payments of about $1,800, discharged from large credit card indebtedness because no intent not to repay was found evident).

Finally, Cundiff's candid admission that the Debtor's "real" credit limit was twenty (20%) percent in excess of his "nominal" credit limit of $7,600 causes us to refrain from holding that the amount charged in excess of the Debtor's credit limit must be deemed nondischargeable, as we did in *Cirineo, supra,* 110 B.R. at 762–63. Therefore, we will declare that the Debtor's entire liability to the Plaintiff is dischargeable.

We note that, in his Answer to the Complaint, the Debtor requested reasonable attorney's fees on behalf of his counsel under 11 U.S.C. § 523(d). In a sequel to *Woods I, supra,* we allowed the Debtor in that case to recover counsel fees of $1,440.75 under § 523(d). *In re Woods,* 69 B.R. 999, 1005 (Bankr.E.D.Pa.1988) (*"Woods II"*). However, we note that we characterized the § 523(a)(2)(C) claim in *Woods II* as "patently frivolous." *Id.* at 1004. Also, many of the factual claims under § 523(a)(2)(C) made by the *Woods* plaintiff were found to be totally unsupported. *Id.* at 1002. The instant Proceeding, wherein the Plaintiff undisputably had the § 523(a)(2)(C) presumption in its favor, presented a much stronger case for the Plaintiff than was presented in *Woods.*

In order to preclude an award under § 523(d), the Plaintiff is obliged to make a

strong showing that it had both a reasonable basis in law and a reasonable connection between the facts proven and the legal theory advanced as to its litigation position. *See In re Carr,* 1994 WL 705228, at *2 (Bankr. E.D.Pa. Dec. 14, 1994). *See also In re Harvey,* 172 B.R. 314, 318 (Bankr.9th Cir.1994); and *In re Cordova,* 153 B.R. 352, 354 (Bankr. M.D.Fla.1993). Had the Plaintiff taken advantage of its right to examine the Debtor pursuant to Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 2004, it could probably have ascertained the aspects of the Debtor's testimony which were compelling to us. However, short of taking a F.R.B.P. 2004 examination of the Debtor, the Plaintiff had substantial justification in relying on the § 523(a)(2)(C) presumption as a key to denial of at least a substantial portion of the indebtedness owed to it. Although the policy of encouraging debtors' counsel to fight for debtors' broadest possible discharges would support such a § 523(d) motion, *see Woods II, supra,* 69 B.R. at 1000–01, this policy is undermined somewhat here by our observation here that, had the Debtor's counsel simply waited to file the Debtor's case until July 3, 1996, the § 523(a)(2)(C) presumption would never have arisen and the Plaintiff might never have filed the instant Proceeding. In a sense, the Debtor's counsel was simply working off his own error in not initially investigating all of the facts of the Debtor's case thoroughly enough.

We would therefore be disinclined to award the Debtor Attorney's fees under § 523(d). We note that the Debtor's counsel did not mention § 523(d) or counsel fees in his brief, and may have decided to forego any such claim. In any event, we will direct that any motion requesting attorney's fees under § 523(d) be filed and served on or before November 12, 1996, and not thereafter.

## D. CONCLUSION

An Order encompassing the conclusions reached in this Opinion will be entered.

### ORDER

AND NOW, this 25th day of October, 1996, after a trial of the above proceeding on October 10, 1996, and upon consideration of the parties' respective post-trial briefs, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Defendant–Debtor, ROCCO J. FULGINITI ("the Debtor"), and against the Plaintiff, BANK ONE COLUMBUS, N.A. ("the Plaintiff").

2. All of the Debtor's indebtedness to the Plaintiff is DECLARED dischargeable.

3. Any motion of the Debtor, by his counsel, seeking attorney's fees pursuant to 11 U.S.C. § 523(d) shall be filed and served on all interested parties and the court in chambers on or before November 12, 1996.