**In re Perry Paul SIMOS, Debtor.**

**MBNA AMERICA, Plaintiff,**

**v.**

**Perry Paul SIMOS, Defendant.**

**Bankruptcy No. 95–50238C–7W.**
**Adversary No. 95–6016.**

United States Bankruptcy Court,
M.D. North Carolina,
Winston–Salem Division.

Jan. 15, 1997.

Larry W. Pearman, Greensboro, NC, for plaintiff.

J. Brooks Reitzel, Jr., Wheeler & Hauser, High Point, NC, for defendant.

### MEMORANDUM OPINION

WILLIAM L. STOCKS, Chief Judge.

This dischargeability action came before the court for trial on November 14, 1996.

The plaintiff, MBNA America, alleges that the defendant, Perry Paul Simos, is indebted to plaintiff in the amount of $9,757.84, plus interest and attorney fees, pursuant to a credit card account with the plaintiff and that such indebtedness is nondischargeable under § 523(a)(2)(A), § 523(a)(2)(B) and § 523(a)(2)(C) of the Bankruptcy Code.

### JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b) which this court may hear and determine.

The court has considered fully the evidence offered by the parties and the arguments of counsel for the parties. Having done so, findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052 are hereinafter set forth.

### FACTS

The relationship between plaintiff and defendant began in September of 1994 when the defendant completed and returned to the plaintiff a credit card application. On September 29, 1994, plaintiff opened a credit card account for the defendant and issued a credit card to the defendant. The transaction apparently was handled entirely by mail.

Defendant began using the credit card on October 25, 1994. Between October 25, 1994, and February 23, 1995, the defendant used the credit card on sixteen occasions involving charges and cash advances totaling $9,927.96. The defendant was a resident of Winston–Salem, North Carolina, during this period and all of the charges and cash advances obtained with the credit card occurred in Winston–Salem. Defendant obtained a $3,000.00 cash advance on October 25, 1994, a $3,000.00 cash advance on December 15, 1994, and a $2,000.00 cash advance on Febru-

ary 13, 1995. All of these cash advances were obtained at Southern National Bank. The remainder of the indebtedness resulted from thirteen separate charges which the defendant made at various businesses located in Winston–Salem.

For several years prior to 1992 the defendant was employed by a restaurant owned by his family in Winston–Salem. In 1992 the defendant decided to go into business for himself. The defendant formed Sigma Food Service, Inc. for the purpose of acquiring a restaurant in Winston–Salem. Following the acquisition of this restaurant the defendant's only employment was at the restaurant which he was operating through Sigma Food Service, Inc. This employment, which in essence amounted to being self-employed, continued until the middle of February of 1995, when ongoing financial difficulties involving the restaurant reached the point at which the restaurant closed suddenly. Thereafter, Sigma Food Service, Inc. filed for relief under Chapter 7, followed by the defendant who filed a Chapter 7 case on March 15, 1995. The defendant resumed working at the restaurant owned by his family and was so employed at the time of the trial of this action. Additional facts are set forth in the following section of this opinion.

### Discussion

A. Claim under § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt for money, property, or services "to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's ... financial condition." Courts generally agree that the following traditional elements of fraud must be proven to sustain a claim under § 523(a)(2)(A): (1) That the debtor made a representation; (2) That at the time the representation was made, the debtor knew the representation was false; (3) That the debtor made the false representation with the intention of deceiving the creditor; (4) That the creditor relied on such representation; and (5) That the creditor sustained the alleged loss and damage as the proximate result of the false representation. *E.g., In re Valdes,* 188 B.R. 533, 535 (Bankr. D.Md.1995); *In re Carrier,* 181 B.R. 742, 746 (Bankr.S.D.N.Y.1995). As to the reliance requirement, § 523(a)(2)(A) requires justifiable, but not reasonable reliance. *Field v. Mans,* —— U.S. ——, ——, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *In re Burdge,* 198 B.R. 773 (9th Cir. BAP 1996). The objecting creditor has the burden of proving each of the foregoing elements by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Stanley,* 66 F.3d 664, 667 n. 4 (4th Cir.1995).

A majority of the courts considering the question, have concluded that under some circumstances, the use of a credit card can give rise to a nondischargeable debt under § 523(a)(2)(A). Although the use of a credit card does not involve a direct transaction between the debtor and the issuer of the credit card, the cases generally find that the use of the credit card by the debtor gives rise to a "representation" for purposes of § 523(a)(2)(A). Most of the cases find that by using the credit card the debtor impliedly represents that he or she has the intention of paying the charges for the goods or services purchased with the credit card. *E.g., In re Faulk,* 69 B.R. 743 (Bankr.N.D.Ind.1986); *In re Carrier,* 181 B.R. 742, 747 (Bankr. S.D.N.Y.1995); *In re Anastas,* 94 F.3d 1280, 1285 (9th Cir.1996). This, of course, leaves the question of whether such a representation should be regarded as fraudulent within the meaning of § 523(a)(2)(A).

In deciding whether fraud has been shown in a credit card case brought under § 523(a)(2)(A), the focus should be upon the nature of the representation arising from the use of the credit card. The more recent and better-reasoned cases emphasize that the representation arising from the use of a credit card is that the user intends to pay the charge when the credit card is used. These cases emphasize that the representation made by the card holder in a credit card transaction is not that he or she has the ability to repay the debt, but that he or she has the intention of repaying the debt. Using a credit card and incurring indebtedness with no intention of attempting to pay the indebtedness constitutes utmost bad faith which is sufficient to satisfy the requirements ·

of § 523(a)(2)(A). However, it is quite another matter where a person in financial distress incurs indebtedness before realizing that his or her financial condition is hopeless and that bankruptcy is dictated by the circumstances which exist at the time of such realization. *In re Anastas*, 94 F.3d 1280, 1283–84 (9th Cir.1996); *In re Alvi*, 191 B.R. 724, 733–734 (Bankr.N.D.Ill.1996); *In re Fulginiti*, 201 B.R. 730, 735 (Bankr.E.D.Pa.1996). In emphasizing that the correct focus in a credit card case brought pursuant to § 523(a)(2)(A) is the intention of the debtor rather than his or her ability to repay, the court in *In re Anastas*, stated:

> Thus, the focus should not be on whether the debtor was hopelessly insolvent at the time he made the credit card charges. A person on the verge of bankruptcy may have been brought to that point by a series of unwise financial choices, such as spending beyond his means, and if ability to repay were the focus of the fraud inquiry, too often would there be an unfounded judgment of nondischargeability of credit card debt. Rather, the express focus must be solely on whether the debtor maliciously and in bad faith incurred credit card debt with the intention of petitioning for bankruptcy and avoiding the debt. A finding that a debt is nondischargeable under § 523(a)(2)(A) requires a showing of actual or positive fraud, not merely fraud implied by law.... While we recognize that a view to the debtor's overall financial condition is a necessary part of inferring whether or not the debtor incurred the debt maliciously and in bad faith, and that the twelve factors we set out in *Eashai* are useful for arriving at a finding of bad faith, the hopeless state of a debtor's financial condition should never become a substitute for an actual finding of bad faith.

*In re Anastas*, 94 F.3d at 1285–86 (citations omitted).

This court concludes that the representation arising from the use of a credit card is that the debtor has the intention of paying the charge. If the evidence establishes that the debtor did not have such intention when the debt was incurred, then fraud exist for purposes of § 523(a)(2)(A) and the debt is nondischargeable. The debtor's financial condition is one of the circumstances which should be evaluated and considered in making the difficult determination of the debtor's subjective state of mind when the charge was made. Extremely poor financial condition at the time of the charge may be strong evidence of a lack of true intent to pay the charge. However, the debtor's financial condition is only one of the circumstances to be considered and the inquiry certainly does not end by looking only at the debtor's financial condition. In some instances, the examination of the twelve "objective" factors [1] referred to in the *Anastas* case will be helpful. While resort to these "objective" factors may be helpful in some cases, in other cases, the debtor's subjective intent regarding payment of the debt can be determined without doing so. *In re Fulginiti*, 201 B.R. at 735.

In the present case, the plaintiff relied primarily upon evidence relating to the defendant's poor financial condition as satisfying the requirements of § 523(a)(2)(A). The defendant admitted that during the latter part of 1994 and the early part of 1995, his company was experiencing financial problems and that during a portion of that time, the company was not paying him a salary. The Debtor further admitted that, as shown on his schedules, he owned few tangible assets during 1994 and early 1995. However, there was no evidence that the defendant was aware that his restaurant would have to close as suddenly as it did, nor was there any evidence to refute defendant's position that

---

**1.** These factors are: (1) the length of time between the charges made and filing of bankruptcy; (2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges are made; (6) whether the charges were above the credit limit of the account; (7) whether the debtor made multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) the financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits and (12) whether the purchases were made for luxuries or necessities. *In re Anastas*, 94 F.3d at 1286.

he put the money into the company with the intention and belief that he could save the company. Furthermore, the fact that the restaurant was experiencing problems and did not pay the defendant a salary for several months does not establish that the defendant did not have any intention of repaying the charges which he made on his credit card.

There was no evidence that the defendant had consulted counsel before making the charges on his credit card or that he had decided to file bankruptcy before the charges were made. Further, this is not a case in which the Debtor made most of the credit card charges on the brink of bankruptcy. To the contrary, during January of 1995, the defendant made no charges and only one cash advance and three small charges during the first part of February. There also was no evidence that the defendant used the credit card to purchase luxury items or services. Regarding the cash advances which were obtained on October 25, 1994, and on December 15, 1994, respectively, the unrefuted testimony of the defendant was that these cash advances were deposited into the checking account of his company and used in the operation of the business. The defendant at no time exceeded the credit limit of his credit card account with the plaintiff and there was no evidence of the defendant's buying habits changing suddenly. The evidence in this case suggests a situation in which the defendant's financial condition was tied closely to his restaurant business and that his financial condition gradually worsened as the problems with the restaurant grew worse. The evidence supports the defendant's contention that he placed the cash advances in the corporate checking account while he still felt that the business was viable and could be saved. In summary, it was the plaintiff's burden to show that when the charges by the defendant on his credit card were made, he had no intention of paying the plaintiff. The evidence relied upon by the plaintiff fell short of carrying this burden. Hence, there was no showing of fraud, false pretenses or false representation on the part of the defendant in this case. Absent such a showing, the plaintiff is entitled to no relief under § 523(a)(2)(A).

The remaining requirement for a showing of fraud in a credit card case is justifiable reliance on the representation of intent to pay and resulting loss to the creditor. In light of the Supreme Court's decision in *Field v. Mans, supra,* cases which earlier required a showing of *reasonable* reliance by the creditor are no longer sound. Instead, the requirement in a credit card case, just as in other cases under § 523(a)(2)(A), is *justifiable* reliance and not *reasonable* reliance. Under the decision in *Field v. Mans,* unless the qualities and characteristics of a particular debtor or the circumstances of the particular case warrant otherwise, the creditor is under no duty to investigate. *In re Burdge,* 198 B.R. 773 (Bankr.9th Cir.1996). What this means in the context of the typical credit card case, is that the issuer of a credit card justifiably relies on a representation of intent to repay as long as the account is not in default and any initial investigation which was made when the card was issued did not raise red flags that would make reliance unjustifiable. *In re Eashai,* 87 F.3d 1082, 1091 (9th Cir.1996); *In re Anastas,* 94 F.3d 1280, 1286 (9th Cir.1996).

Returning to the evidence in the present case, there is no basis upon which this court could find justifiable reliance on the part of the plaintiff. The plaintiff offered no evidence regarding the circumstances under which it issued the card or the information which the plaintiff had when the card was issued and when the charges were made by the defendant. Without some evidence regarding the information which was known to the plaintiff at the time that the credit card was issued and at the time the charges were made, there is no basis for this court to find that there was justifiable reliance on the part of the plaintiff. It is not clear why no such evidence was offered in this case. If evidence had been offered that at the time the card was issued, the plaintiff was not aware of any poor credit history on the part of the defendant and that no such information was received by the plaintiff prior to the charges in question, then the court would have a basis for finding justifiable reliance, assuming that the account was not in default when the charges in question were made.

On the other hand, had the evidence shown that a credit investigation was done and that the investigation revealed that this defendant had a number of credit cards which were in default and which had been used in excess of the credit limits, justifiable reliance would not exist in this case. In any event, this is the type of information obviously within the knowledge of the plaintiff who is the party in a position to produce such evidence. The fact that less is required for a showing of justifiable reliance than for a showing of reasonable reliance does not mean that no evidence whatever is needed in order for the court to make a finding of justifiable reliance. Without some supporting evidence, a finding of justifiable reliance is not warranted which means that the plaintiff failed to satisfy another of the essential requirements under § 523(a)(2)(A).

B. Claim under § 523(a)(2)(B).

■■■ The plaintiff also argues that the application submitted by the defendant is materially false and that the indebtedness owed to the plaintiff is nondischargeable pursuant to § 523(a)(2)(B). Under § 523(a)(2)(B) a debt is nondischargeable if it is for money or an extension, renewal or refinancing of credit obtained by the use of a statement in writing (1) that is materially false; (2) respecting the debtor's financial condition; (3) that is reasonably relied upon by the creditor; and (4) that was published by the debtor with intent to deceive. In an action under § 523(a)(2)(B) the creditor has the burden of proof on each of the elements required under that section. *In re Booker*, 165 B.R. 164 (Bankr.M.D.N.C.1994); *In re Showalter*, 86 B.R. 877 (Bankr.W.D.Va.1988); *In re Criswell*, 52 B.R. 184 (Bankr.E.D.Va. 1985). However, just as with § 523(a)(2)(A), the requisite elements under § 523(a)(2)(B) need be shown only by a preponderance of the evidence and not by clear and convincing evidence or any other heightened burden of proof. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■■■ During his testimony, the defendant admitted that he submitted an application for a credit card to the plaintiff. The defendant also admitted that he indicated on the application that he had an annual income of $40,-000.00. However, the copy of the application relied upon by the plaintiff is illegible, leaving only the defendant's admission that he listed a $40,000.00 annual income on the application. The plaintiff did not offer any evidence regarding the receipt of the application nor regarding the role, if any, that the application played in granting a credit card to the defendant. Specifically, there was no evidence as to the procedure which was followed by the plaintiff in processing the application, no evidence whether a credit history was obtained, no evidence whether a credit history was relied upon in granting the credit card and, most importantly, no evidence whether the application submitted by the defendant was relied upon in granting a credit card to the defendant. Absent such evidence, there is no basis for the court to find that the plaintiff relied on the application in extending a credit card to the defendant. Since reliance in fact is an essential element of reasonable reliance which, in turn, is a necessary ingredient under § 523(a)(2)(B), it follows that the plaintiff in this case is not entitled to any relief under § 523(a)(2)(B) without regard to whether the application accurately stated the defendant's annual income. *In re Carrier*, 181 B.R. 742, 747 (Bankr.S.D.N.Y.1995).

C. Claim under § 523(a)(2)(C).

In arguing against the dischargeability of the indebtedness owed by the defendant, the plaintiff also has invoked § 523(a)(2)(C) which provides:

(C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $1,000 for "luxury goods or services" incurred by an individual debtor on or within 60 days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of

the debtor or a dependent of the debtor; an extension of consumer credit under an open end credit plan is to be defined for purposes of this subparagraph as it is defined in the Consumer Credit Protection Act;

■ The defendant charged goods and services on his credit card on three occasions during the 60 days preceding the order for relief in this case. However, these charges in the aggregate were only $253.83. Since these purchases total less than $1,000 in the aggregate, § 523(a)(2)(C) is not applicable to this portion of defendant's indebtedness.

On February 13, 1995, which also was within the 60 days preceding the filing of defendant's Chapter 7 case, the defendant obtained a $2,000.00 advance on his credit card. This portion of the indebtedness is subject to § 523(a)(2)(C) and therefore is presumed to be nondischargeable under § 523(a)(2)(A). This requires that the court consider the effect of the presumption arising under § 523(a)(2)(C).

■ The presumption created by § 523(a)(2)(C) is rebuttable. Moreover, the existence of the presumption does not shift the burden of proof from the creditor, it shifts the initial burden of going forward with the evidence to the debtor. *See In re Fulginiti,* 201 B.R. 730, 733 (Bankr.E.D.Pa. 1996); *Matter of Sparks,* 154 B.R. 766, 768 (N.D.Ala.1993); *In re Vernon,* 192 B.R. 165, 171 (Bankr.N.D.Ill.1996); *In re Johannsen,* 160 B.R. 328, 331 (Bankr.W.D.Wis.1993); *In re McDonald,* 129 B.R. 279, 283 (Bankr. M.D.Fla.1991); *In re Leaird,* 106 B.R. 177, 179–80 (Bankr.W.D.Wis.1989); *In re Koch,* 83 B.R. 898, 902 (Bankr.E.D.Pa.1988); *In re Faulk,* 69 B.R. 743, 752 (Bankr.N.D.Ind. 1986).

■ In the present case the testimony of the defendant regarding the $2,000.00 cash advance was sufficient to rebut the § 523(a)(2)(C) presumption that the defendant obtained the advance with fraudulent intent. The defendant testified that he obtained the $2,000.00 cash advance on February 13, 1995, in order to put the money into his restaurant business. Although he acknowledged that the business was experienc-ing financial problems at that time, the evidence showed that he felt that the business had a chance and was doing all that he could to save the business. The defendant indicated that he intended to keep operating the restaurant and felt that he could save the business right up to the time that it closed, which he testified occurred suddenly. The defendant may have been a poor businessman and perhaps could have seen earlier that his business was doomed. However, the testimony of the defendant satisfied the court that the defendant is not a dishonest businessman and did not obtain the cash advance with the intent of not repaying the plaintiff.

■ Section 523(a)(2)(C) was enacted primarily to deal with the situation in which a debtor "loads up" with debt by going on a buying or spending spree in contemplation of bankruptcy. *See In re Faulk,* 69 B.R. at 751. It was not intended to punish poor business judgment exercised without any fraudulent intent. In the present case the evidence did not show that the defendant loaded up on credit card debts just prior to bankruptcy. To the contrary, the defendant had only three other charges on his credit card during the 60 days preceding bankruptcy and these charges totaled only $253.83. The defendant gave credible testimony which rebutted the presumption of fraudulent intent created under § 523(a)(2)(C) regarding the $2,000.00 cash advance on February 13, 1996. Therefore, that portion of the indebtedness, as well as the remainder of the indebtedness owed to the plaintiff is outside of § 523(a)(2) and is subject to discharge under § 727 of the Bankruptcy Code.

## CONCLUSION

A judgment will be entered denying any relief to the plaintiff in accordance with this memorandum opinion.