**In re Elsie May POWELL, Debtor.**

**CENTRAL FIDELITY NATIONAL BANK, Plaintiff,**

v.

**Elsie May POWELL, Defendant.**

**Bankruptcy No. 7–96–04348–HPR–7. Adversary No. 7–97–00065.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Aug. 12, 1997.

Thomas E. Wray, Roanoke, VA, for Creditor/Plaintiff.

Gary E. Bowman, Roanoke, VA, for Debtor/Defendant.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

The within Adversary Proceeding is before the Court pursuant to Central Fidelity National Bank's (Bank) complaint to determine dischargeability of a debt. The sole issue is whether the debt was incurred fraudulently pursuant to 11 U.S.C. § 523(a)(2)(A) and (C). For the reasons hereafter stated, this Court holds that the debt is dischargeable.

The facts are as follows: The Debtor, Elsie May Powell, filed a Chapter 7 petition in this Court on December 20, 1996. Almost two months prior to the filing, on November 1, 1996, charges were incurred by the Debtor on a credit card issued by the Bank. The total amount of the cash advance was $1,619.72. The Bank alleges that this debt was incurred within the sixty (60) day presumption period of § 523(a)(2)(C) and incurred under false representation, false pretenses or actual fraud under § 523(a)(2)(A).

Upon hearing, the Debtor testified that at the time she obtained the cash advance she was employed with L'eggs Distribution Center. On November 23, 1997, the Debtor lost her job when the distribution center closed. She testified that she has searched for other employment but that she has been unable to find a suitable job due to her medical condition of vertigo, arising from an inner ear operation. She has applied for social security disability. The cash advance was in the amount of $1,615.00, which was below her credit limit of $2,500.00. The advance was not used on luxury goods or services, but instead was used to pay her daughter's orthodontist bill. The Debtor had never used the credit card prior to obtaining the cash advance and no additional charges were made on the credit card thereafter. The Debtor testified that at the time she obtained the cash advance, she acted in good faith and she fully intended to re-pay the credit card company, but was unable to do so when her employment was thereafter terminated. The Bank did not produce any additional evidence or testimony that the Debtor committed actual fraud.

As an initial matter, the Court notes that the Bankruptcy Code generally is to be liberally construed in favor of the debtor. *See*

*Williams v. USF & G,* 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Roberts v. W.P. Ford & Son Inc.,* 169 F.2d 151, 152 (4th Cir.1948)(citing *Johnston v. Johnston,* 63 F.2d 24, 26 (4th Cir.1933) and *Lockhart v. Edel,* 23 F.2d 912, 913 (4th Cir.1928)). This universally recognized principle serves to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citations omitted). This same "honest but unfortunate debtor" is thus provided with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755, 764, 765 (1991); *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233, 241 (1971); *Local Loan Co. v. Hunt,* 292 U.S., at 244, 54 S.Ct., at 699; *Johnston v. Johnston,* 63 F.2d, at 26; *Royal Indemnity Co. v. Cooper,* 26 F.2d 585, 587 (4th Cir.1928).

This Court, upon trial of this matter, heard the evidence including the testimony of the witnesses. It observed the candor, demeanor, truthfulness, and forthright testimony of witnesses as well as their credibility and makes the findings and conclusions herein.

The Court believes that some historical background may be helpful in reviewing the facts and law herein. 11 U.S.C. § 523(a)(2)(A) states in pertinent part as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

This section of the Bankruptcy Code is derived from § 17(a)(2) of the 1898 Bankruptcy Act with slight modification. Section 17(a)(2) expressly excepted from discharge "liabilities for obtaining money or property by false

pretenses or false representations." 8 *Remington on Bankruptcy* § 3318 (6th Ed.1955). This exception was introduced by amendment of 1903, except as the words "money or" were added to it in 1938. *Id.* Before the amendment of 1903, § 17(a) released the debtor from all actions for fraud that were not reduced to judgment. The amendment removed the requirement of a judgment and would not discharge the debtor if the claim was merely upon a "liability" for fraud in obtaining property by false pretenses or false representations. However, "[t]he fact alone that the bankrupt or ex-bankrupt is charged with 'fraud' is not enough to except his liability from release by discharge." *Remington* at § 3319. "The mere fact that the gravamen of the complaint is fraud [does] not prevent the operation of discharge since the Amendment of 1903, though formerly it would." *In re Thaw*, 180 F. 419 (1910). "Even prior to the 1903 amendment, when the exclusion from discharge covered all 'judgments for frauds' it was restricted by construction to instances of actual, as contrasted with constructive fraud." 8 *Remington on Bankruptcy* § 3320 (6th Ed.1955). Generally speaking, the element of "intent to defraud" must have been present or at least presumable from the circumstances.[1] *Id.* (*citing Sanger Bros. v. Barrett*, 221 S.W. 1087 (Tex.Civ.App.1920)).

"Actual fraud" was added in the 1978 Code as a ground for exception from discharge. 3 Bankr.L.Ed. § 22:69 (1979). However, the Court in *In re Pommerer*, 10 B.R. 935 (Bankr.Minn.1981) stated that the addition of "actual fraud" added nothing that had not been judicially impressed upon § 17 of the

1898 Bankruptcy Act. The Court further stated that "fraud has its derivation in the common law action for deceit, but has grown to include all intentional acts or omissions involving artifice to constitute a breach of legal duty causing injury to another." The court stated that actual fraud involves moral turpitude and does not include fraud implied in law which may exist without imputation of bad faith or intentional wrong.

In the well reasoned case of *First National Bank of Mobile v. Roddenberry*, 701 F.2d 927 (11th Cir.1983), the Court of Appeals held that a creditor cannot prevail under 11 U.S.C. § 523(a)(2)(A) on allegations of false pretense or false representation if the creditor did not revoke the credit privileges of the debtor.[2] In this case, the Bank did not revoke any privileges and there is no evidence in the record to show otherwise. Thus, the Bank must prove by a preponderance of the evidence that the cash advance was procured through "actual fraud." *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). To provide actual fraud the Bank must show that the Debtor made materially false representation; that she knew the representations were false at the time she made them; that the Debtor had the intention of deceiving the Bank; and that the Bank suffered damages as the proximate result of these misrepresentations. *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967); *See also In re Elibuyuk*, 163 B.R. 75 (Bankr.E.D.Va. 1993).

---

**1.** *Remington on Bankruptcy* clarifies that § 67(d)(2)(d) of the Bankruptcy Act stated that "every transfer made and every obligation incurred by a debtor within 1 year prior to the filing of a petition initiating proceedings under the Act by or against him is fraudulent ... (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors. This is practically identical to § 7 of the Uniform Fraudulent Conveyance Act, which is a recast of the English statute of 13 Eliz., ch 5." 4 *Remington on Bankruptcy*, § 1646 (6th Ed.1955). The factor of "actual" intent, "as distinguished from intent presumed in law," is however, material in both the Bankruptcy Act and the Uniform Act provi-

sions. *Remington* at 1646. *See also In re Decker*, 295 F.Supp. 501 (W.D.Va.1969); aff'd 420 F.2d 378 (4th Cir.1970).

**2.** The *Roddenberry* Court held that "the voluntary assumption of risk on the part of a bank continues until it is clearly shown that the bank unequivocally and unconditionally revoked the right of the cardholder to further possession and use of the card, and until the cardholder is aware of this revocation ... only after such clear revocation has been communicated to the cardholder will further use of the card result in liabilities obtained by 'false pretenses or false representation' for purposes of bankruptcy dischargeability." *Id.* at 932.

█ Based upon the testimony of the Debtor and the lack of evidence demonstrating fraudulent intent, this Court holds that the Bank did not sustain the burden of proof required that the Debtor violated the foregoing section by preponderance of the evidence. Debtor did not commit actual fraud pursuant to § 523(a)(2)(A).

█ Alternatively, the Bank alleges that in the case of a cash advance, a creditor is entitled to a presumption of fraud if the cash advance was for more than $1,000.00 and was obtained within 60 days of the bankruptcy petition pursuant to § 523(a)(2)(C). 11 U.S.C. § 523(a)(2)(C) states in pertinent part as follows:

"... cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within 60 days before the order for relief under this title, are presumed to be nondischargeable;"

Once the presumption arises as here, the burden of proof then shifts to the Debtor to overcome the presumption of false pretenses, representation or actual fraud. To rebut the presumption, the Debtor must show that there is a "substantial doubt ... as to the existence of the presumed intent to defraud the creditors." *In re Orecchio*, 109 B.R. 285, 290 (Bankr.S.D.Ohio 1989); *See also Signet Bank v. Rawoot*, 14 F.3d 596 (4th Cir.1993) *(unpublished)*. The Debtor testified that she was employed at the time of the cash advance. She testified that she obtained the money for the sole purpose of paying her daughter's orthodontist. She testified that she believed she could reduce the monthly payments by borrowing the money from the credit card to pay the orthodontist because the credit card payment would be approximately $50.00 as compared to the $100.00 she would have had to pay. Indeed, Debtor's testimony shows that the credit card was not obtained by false pretenses, false representation or actual fraud. Nor was the cash advance obtained with the intention of defrauding the Bank. The testimony shows that Debtor fully intended to repay the credit card, and thus has met the burden necessary to rebut the presumption of nondischargeability under § 523(a)(2)(C).

█ Additionally, the Bank brought this adversary proceeding, compelling the debtor to defend such, and did not provide any evidence, testimony or proof that the debt is nondischargeable. The reasons given by the debtor as to the circumstances surrounding the incurring of the debt were reasonable and without any showing of fraud. Pursuant to 11 U.S.C. § 523(d), the debtor shall be awarded reasonable costs and attorney's fees. Accordingly, the debt is dischargeable and an Order will be entered.